**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARTESE L. FLEMING, | Case No. 19-cv-07898 |
| Plaintiff, | |
| v. | The Honorable Judge Sara L. Ellis |
| THE VILLAGE OF DOLTON, DOLTON POLICE SERGEANT LEWIS LACEY, Star No. 50, and DOLTON POLICE OFFICERS K. COLLINS, Star No. 202, and JOSEPH MCNEAL, Star No. 109, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**AMENDED COMPLAINT**

Now comes Plaintiff, MARTESE L. FLEMING, by and through his attorneys, Jerome F. Buch and Jasmine J. Stanzick of Seyfarth Shaw LLP, and brings the following complaint against Defendant the VILLAGE OF DOLTON, and Defendants DOLTON POLICE SERGEANT LEWIS LACEY, Star No. 50; and DOLTON POLICE OFFICERS K. COLLINS, Star No. 202, and JOSEPH MCNEAL, Star No. 109:

**JURISDICTION AND VENUE**

1. This is an action for damages arising under 42 U.S.C. § 1983 to provide appropriate relief to Plaintiff for Defendants' violations of Plaintiff's rights enumerated under the Fourth and Fourteenth Amendments to the U.S. Constitution.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

## PARTIES

4.      Plaintiff, Martese Fleming, is a citizen of the United States, who, at the time of the events complained of, resided in Riverdale, Illinois. At all times relevant, Plaintiff was gainfully employed.

5.      At all relevant times, Dolton Police Sergeant Lewis Lacey ("Sergeant Lacey"), and Dolton Police Officers K. Collins ("Officer Collins") and Joseph McNeal ("Officer McNeal") were (i) on duty, in uniform, and riding in marked Dolton Police Department squad cars; (ii) employed by the Village of Dolton; and (iii) acting within the scope of their employment, under the color of law. They are sued in their individual capacities.

6.      The Village of Dolton is a municipal entity duly organized under the laws of the State of Illinois and was, at all relevant times, the employer and principal of Sergeant Lacey, Officer Collins and Officer McNeal.

## FACTUAL ALLEGATIONS

7.      On Saturday June 23, 2018, at or around 11:20 a.m., Plaintiff's vehicle was parked across the street from his friend James' house, at or near 15645 Dobson Avenue in Dolton, Illinois.

8.      At the time and place referenced above, Plaintiff was lawfully standing on the sidewalk talking with James. Plaintiff's friends, Marse and Jeremy, were sitting in the front and back passenger's seats of Plaintiff's car listening to music.

9.      At or around 11:27 a.m., Sergeant Lacey received a radio call from the Village of Dolton Dispatch ("Dispatch") reporting a complaint about a suspect selling cannabis at 15645 Dobson Avenue. (Dispatch Call Audio Clip ("DC Audio"), 11:27:51 AM.) Dispatch stated that a black van was parked outside waiting for suspect to come out and sell him marijuana. Officer

Collins was dispatched to head with Sergeant Lacey to 15645 Dobson, in response to Sergeant

Lacey's request that Dispatch send someone to meet him there.

10.     Five minutes later, at or around 11:33 a.m., Sergeant Lacey called Dispatch from

15645 Dobson to ask for another description of the vehicle. He then asked Dispatch to run a

license check on Plaintiff's vehicle. Dispatch identified Plaintiff as the owner of the black 2013

Dodge Utility. (DC Audio, 11:33:55 AM.)

11.     Without cause, warning, justification, or provocation, Sergeant Lacey exited his

squad car and, pointing his taser-gun in Plaintiff's direction and threatening to use it, instructed

Plaintiff to get on the ground and put his hands on his head. Plaintiff, afraid and confused,

immediately complied with Sergeant Lacey's instructions and got to his knees.

12.     Without cause, justification or provocation, Sergeant Lacey unlawfully and

unreasonably used excessive force against Plaintiff by (i) shoving his knee into Plaintiff's back;

(ii) pushing Plaintiff further towards the ground and restraining Plaintiff in handcuffs; and (iii)

punching him in the back and on the side of the head.

13.     Without cause or justification, Sergeant Lacey conducted a search of Plaintiff's

person and confiscated Plaintiff's car keys.

14.     At no time during this unlawful search and seizure of Plaintiff did Sergeant Lacey

have a valid search or arrest warrant for Plaintiff, nor did Sergeant Lacey have Plaintiff's

consent, exigent circumstances, nor probable cause to believe Plaintiff had or was committing a

crime.

15.     The physical abuse described above is not captured on Sergeant Lacey's body

camera, which Sergeant Lacey switched on at 11:36 a.m. (*See* Evidence Audit Trail Report.)

16.    Specifically, the video footage produced by the Village of Dolton does not show Sergeant Lacey arriving at 15645 Dobson Avenue in his squad car, nor does it show him witnessing a crime which would justify his use of excessive force upon Plaintiff. Importantly, at no point in the video footage obtained from Sergeant Lacey's body camera is Plaintiff seen being placed in handcuffs.

17.    The video footage begins with Sergeant Lacey instructing Marse to exit the front passenger's seat of Plaintiff's vehicle. Sergeant Lacey immediately placed Marse in handcuffs and walked him towards the driver's side of the car where Officer Collins was standing directly behind Plaintiff. Plaintiff was pushed up against the side of his vehicle and two sets of handcuffs were used to restrain him.[1] Plaintiff always remained in handcuffs until he was booked and released from the Dolton Police station. James, also in handcuffs, was standing behind the trunk of the car.

18.    Sergeant Lacey returned to the other side of Plaintiff's car to retrieve Jeremy from the back seat. Having no more handcuffs with which to restrain Jeremy, Sergeant Lacey told Jeremy that he was "doing him on the honor system," and stated: "If you do anything other than what I tell you to do, start that running stuff, I'm a tell you something, I'm going to light you up. You feel? That means I'm gonna tase you." (Sgt. Lacey Body Camera Video Footage ("*Body Cam Video No. 1*"), 01:07 minute mark.)

19.    Officer Collins and Sergeant Lacey conducted a full body search of Plaintiff and his companions. Nothing was found on Plaintiff's person.

20.    Sergeant Lacey then conducted a thorough search of Plaintiff's vehicle, searching between and under every seat, starting with the backseat and moving towards the front passenger

---

[1] Dispatch places Officer Collins at 15645 Dobson at or around 11:38 a.m. (DC Audio, 11:38 AM.)

seat where he found a rolled up cigarette with green leafy substance, which he pulled out from underneath the front passenger's seat and which was not previously in plain view. (*Body Cam Video No. 1*, 02:57 min. mark.)

21.     Sergeant Lacey proceeded to search the driver's seat and the compartment between the driver's seat and passenger's seat. The video footage does not show Sergeant Lacey finding anything during his first search of the driver's seat. Neither Sergeant Lacey nor Officer Collins had warrants to arrest or search Plaintiff, Plaintiff's vehicle or his companions, nor did any of them grant them consent to do so.

22.     Upon completion of the above-mentioned searches, Sergeant Lacey told Plaintiff and his friends that they were all getting tickets for possession of cannabis, and that Plaintiff's car was going to be towed. He then instructed Officer Collins to take James and Marse back to Collins' squad car to write up their tickets.

23.     When Officer Collins stepped out of the video frame, Sergeant Lacey placed a call to Dispatch to request a larger vehicle for transport. The time stamp on the dispatch call log indicates that this request was made at 11:45:30 a.m. (DC Clip, 11:45:30 AM.)

24.     Sergeant Lacey walked towards the driver's car door, which was still open from the previous search he conducted as described in paragraph 21, and placed Plaintiff's car keys on the door handle while Plaintiff and Jeremy were looking away in Officer Collins' direction.

25.      Sergeant Lacey then showed Plaintiff something in his hand that he allegedly found in Plaintiff's car. He confronts Plaintiff and says: "What's this? What's this? You wanna tell me cause I'm going to find out. I got kits for this." (*Body Cam Video No. 1*, 05:00 min. mark.) Plaintiff stated "I don't know what that is." (*Id.* at 05:07 min. mark.) Sergeant Lacey's

body camera does not show whatever it is he showed Plaintiff. Sergeant Lacey returned the unknown item back onto the car door handle.

26.     When Officer Collins returned, Sergeant Lacey retrieved the unknown item and handed it to Officer Collins stating: "You know what it is." (*Body Cam Video No. 1*, 06:18 min. mark.) Sergeant Lacey's hand appears in the frame for a split second but the items are again unidentifiable. Officer Collins returned the unknown item to Sergeant Lacey and proceeded to claps his hands together as if dusting off his palms. (*Id.* at 06:22 min. mark.) Sergeant Lacey then placed the unknown item on top of the hood of Officer Collins' squad car.

27.     The unknown item is never identified in the video footage, nor it is ever mentioned in ***any*** of the subsequent police reports, including the Dolton Police incident report, inventory sheet, or vehicle incident report that were prepared in connection with Plaintiff's arrest.

28.     Officer Collins grabbed Plaintiff by the arm and started ushering him towards his squad car. Plaintiff, confused, asked Officer Collins what was going on, to which Officer Collins responded: "You're going to jail that's what's going on." (*Body Cam Video No. 1*, 06:35 min. mark.)

29.     Plaintiff again insisted that Sergeant Lacey and Officer Collins tell him why he was going to jail. Sergeant Lacey, seemingly fed up, answered that Plaintiff was going to jail for "possession." (*Body Cam Video No. 1*, 06:52 min. mark.) Plaintiff then asked what he was being charged with possession of, to which Sergeant Lacey responded "Don't worry about it." (*Id.* at 06:54 min. mark.)

30.     Without warning, provocation, or justification, Sergeant Lacey pulled out his taser-gun and pointed it in Plaintiff's direction.  (*Body Cam Video No. 1*, 06:59 min. mark.)

Officer Collins, with his taser already out, let go of Plaintiff's forearm, took a step back from Plaintiff and without warning, provocation, or justification, pointed his taser at Plaintiff and said: "He's gonna tase your ass." (*Body Cam Video No. 1*, 07:10 min. mark.)

31.     Plaintiff, still handcuffed and without having been read his rights, asked again why he was going to jail. Officer Collins, notwithstanding the fact that Plaintiff, on said day, had not committed an act contrary to the laws of the State of Illinois, stated: "Possession of controlled substance. Move your ass." (*Body Cam Video No. 1*, 07:17 min. mark.)

32.     Over Plaintiff's protests, Sergeant Lacey walked Plaintiff towards his own squad car. The entire time the two are standing alone, Sergeant Lacey is tightly gripping Plaintiff's shirt and pointing his taser-gun in the direction of Plaintiff's body.

33.     The next few minutes is footage of Plaintiff repeatedly asking Sergeant Lacey what he has done wrong, why he is going to jail, why he is being arrested, and what crime he is being charged with. Plaintiff even asked that Sergeant Lacey read him his rights, which Sergeant Lacey did not do, and which neither Sergeant Lacey nor Officer Collins had done since the moment Plaintiff learned that he was being arrested for possession of a controlled substance.

34.     Sergeant Lacey called Officer Collins over to his squad car and instructed him to write Plaintiff a ticket for possession of marijuana and a ticket for loud music. Officer Collins again told Plaintiff that he was being arrested for possession. (*Body Cam Video No. 1*, 08:38 min. mark.) Sergeant Lacey then told Plaintiff he was being arrested for resisting arrest and obstruction of justice. (*Id.* at 08:58 min. mark.) Sergeant Lacey, at all times during this conversation, was holding his taser-gun in his right hand ready to be deployed in Plaintiff's direction.

35.     Minutes later, Officer McNeal arrived in a large squad car to transport Plaintiff to the Dolton Police Department for booking. Sergeant Lacey walked Plaintiff towards the backseat of Officer McNeal's car.

36.     Standing outside of Officer McNeal's vehicle, Plaintiff plead with Officer McNeal to tell him why he was being arrested. Officer McNeal, taser in hand, looked to Sergeant Lacey for a response and said: "When I tase him I want to know what I'm arresting him for." (*Body Cam Video No. 2*, 05:38 min. mark.) Sergeant Lacey responded: "Well he's got weed in the car. Loud music. Possession. It's gonna be obstruction and resisting." (*Id.* at 05:44 min. mark.)

37.     Plaintiff continued to protest the basis of his arrest, to which Officer McNeal, seemingly frustrated by Plaintiff's persistent questions, clearly stated: "I don't know what you're going to jail for." (*Body Cam Video No. 2*, 05:56 min. mark.)

38.     Officer McNeal pulled out his pepper spray and pointed it straight at Plaintiff's face. During this interaction, Officer McNeal removed Plaintiff's baseball cap and said: "I wanna make sure I get your face." (*Body Cam Video No. 2*, 06:44 min. mark.)

39.     Officer McNeal then proceeded to aggressively yell the following without interruption: "Get in the car sir.  Get in the car.  Get in the car sir.  You're resisting sir.  Get in the car sir.  Get in the car sir.  You're resisting.  Stop resisting sir.  You'll get it sir.  Get in the car please.  We don't wanna do this.  Please stop resisting.  Please stop resisting.  Let's go.  It's coming again.  Stop resisting sir.  I don't wanna do this sir." (*Body Cam Video No. 2*, 06:53 min. mark.)

40.     Without a valid justification or cause, Officer McNeal deployed two sprays of pepper spray directly into Plaintiff's face. Plaintiff, terrified and unable to see because of the

burning sensation of the pepper spray in his eyes, is then ushered into Officer McNeal's squad car.

41.     Officer McNeal transported Plaintiff to the Dolton police station to be booked on a charge of resisting arrest. All of the remaining subjects were issued local citations for possession of cannabis and were released without incident.

42.     During transport, Officer McNeal told Plaintiff that if he had not resisted arrest, none of this would have happened.

43.     The incident report prepared by Officer Collins, lists Officer Collins, Sergeant Lacey, and Officer McNeal as the responding officers to Plaintiff's arrest.

44.     Officer Collins's narrative falsely reports that he and Sergeant Lacey were dispatched to the scene "for subjects selling unknown *narcotics* from a vehicle."(Dolton Police Incident Report, at pg. 2.)

45.     No evidence of narcotics was ever seen on the video footage, nor mentioned in any of the inventory reports generated by Sergeant Lacey, Officer McNeal or Officer Collins in relation to Plaintiff's purported arrest for possession of a controlled substance. Rather, Plaintiff was issued citations for violations of local ordinances including excessive noise, possession of cannabis, and possession of open an alcoholic beverage.[2]

46.     The supplemental report filed by Officer McNeal, in direct contravention to the video footage obtained from Sergeant Lacey's body camera, falsely states that Sergeant Lacey "advised the offender of his rights and why the offender was arrested." (Incident Report, at pg. 3.)

---

[2] In July 2016, Gov. Bruce Rauner signed Senate Bill 2228, which decriminalized possession of small amounts of marijuana. The new law made possession of up to 10 grams of marijuana a civil offense punishable by a fine of between $100 and $200.

47.     Officer McNeal and Sergeant Lacey signed *identical* misdemeanor complaints, each charging Plaintiff with resistance of a peace officer and in which each of them state that he was the one to place Plaintiff in handcuffs.

### *Conspiracy*

48.     Sergeant Lacey, Officer McNeal, and Officer Collins conspired to cause damage to Plaintiff in the following manner:

> a.      using excessive force and/or failing to intervene in the use of excessive force against the Plaintiff;
>
> b.      agreeing not to report each other after witnessing and/or using excessive force relative to the Plaintiff;
>
> c.      agreeing to falsely arrest Plaintiff on the basis of resisting a peace officer, despite there being no probable cause for Plaintiff's arrest;
>
> d.      generating false documentation to cover-up their own and each other's misconduct in injuring the Plaintiff and cause Plaintiff to be prosecuted for resisting arrest.

### COUNT I — 42 U.S.C. § 1983 Excessive Force
### (Against Sergeant Lacey and Officer McNeal)

49.     Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

50.     The actions of Sergeant Lacey and Officer McNeal constituted unreasonable, unjustifiable, and excessive force against Plaintiff, thus violating his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be secure against unreasonable searches and seizures and thus violated 42 U.S.C. § 1983.

51.     Such force was unreasonable in these circumstances because Plaintiff had violated no laws of the State of Illinois at the time of his arrest, and neither Sergeant Lacey nor Officer

McNeal had seen any evidence, nor had any probable cause that Plaintiff had committed a criminal offense.

52.     At no times did Plaintiff obstruct justice, resist arrest, batter and/or assault either Sergeant Lacey , Officer McNeal or Officer Collins.

53.     As a direct and proximate result of Sergeant Lacey and Officer McNeal's actions, Plaintiff endured physical pain and suffering as well as humiliation, mental distress and anguish.

54.     The acts of Sergeant Lacey and Officer McNeal were done maliciously, wantonly and intentionally, and, accordingly, Plaintiff is entitled to exemplary and punitive damages.

WHEREFORE, Plaintiff demands compensatory damages from Sergeant Lacey and Officer McNeal. Plaintiff also demands punitive damages, costs and attorneys' fees against Sergeant Lacey and Officer McNeal and whatever additional relief this Court deems equitable and just.

### COUNT II—42 U.S.C. § 1983 False Arrest
### (Against Sergeant Lacey, Officer Collins, and Officer McNeal)

55.     Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

56.     On June 23, 2018, Plaintiff was seized and arrested without a warrant and without probable cause. This seizure and arrest were in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the U.S. Constitution.

57.     Sergeant Lacey, Officer Collins, and Officer McNeal unlawfully and maliciously arrested Plaintiff and wrongfully detained and searched him without any legal right to do so, in their official capacity as law enforcement officers, under color of state law, and acting within the scope of their employment.

58. The actions of the Sergeant Lacey, Officer Collins, and Officer McNeal described above, whereby they knowingly arrested Plaintiff, without probable cause or any other justification constituted deliberate indifference to his rights under the U.S. Constitution, thus violating the Fourth and Fourteenth Amendments to the United States Constitution.

59. As a result of the false arrest, Plaintiff was injured, including loss of liberty, emotional damage, legal fees, trauma, humiliation, mental distress and anguish.

60. The actions of Sergeant Lacey, Officer Collins, and Officer McNeal were objectively unreasonable and were undertaken intentionally with malice, willfulness, and/or reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff demands compensatory damages from Sergeant Lacey, Officer Collins, and Officer McNeal. Plaintiff also demands punitive damages, costs and attorneys' fees against Sergeant Lacey, Officer Collins, and Officer McNeal and whatever additional relief this Court deems equitable and just.

## COUNT III—42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights
### (Against Sergeant Lacey, Officer Collins, and Officer McNeal)

61. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

62. Sergeant Lacey, Officer Collins, and Officer McNeal, acting together and under the color of law, reached an understanding and agreement, engaged in a course of conduct and otherwise conspired among and between themselves to deprive Plaintiff of his Constitutional rights, including his right to be free from unlawful searches and seizures as protected by Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

63. In furtherance of this conspiracy or conspiracies, Sergeant Lacey, Officer Collins, and Officer McNeal committed the overt acts set forth above, including but not limited to the use

of excessive force, and falsely charging Plaintiff with resisting a peace officer; conduct which was the direct and proximate cause of the violations of Plaintiff's constitutional rights under the Fourth Amendment and Fourteenth Amendment.

64.     The actions of Sergeant Lacey, Officer Collins, and Officer McNeal were objectively unreasonable and were undertaken intentionally with malice, willfulness, and/or reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff demands compensatory damages from Sergeant Lacey, Officer Collins, and Officer McNeal. Plaintiff also demands punitive damages, costs and attorneys' fees against Sergeant Lacey, Officer Collins, and Officer McNeal, and whatever additional relief this Court deems equitable and just.

### COUNT IV—42 U.S.C. § 1983 *Monell* Liability Claim
### (Against the Village of Dolton)

65.     Plaintiff re-alleges all of the above paragraphs and counts, as if fully set forth herein.

66.     Prior to June 23, 2018, the Village of Dolton through its Police Department, Police Superintendent, the Office of Professional Standards (O.P.S.) and Directors of the O.P.S., had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage having the force of law.

67.     Prior to and at the time of June 23, 2018, the Village of Dolton was aware that Sergeant Lacey had been named as a defendant in numerous federal civil rights cases that alleged that Sergeant Lacey committed excessive force, false arrest or other police misconduct: *Eaves v. Village of Dolton et al.*, 12-cv-02986 (§ 1983 false arrest); *White v. Village of Dolton et al.*, 13-cv-07914 (§ 1983 excessive use of force and false arrest); *O'Brien v. Lacey et al.*, 13-cv-09313

(§ 1983 excessive use of force and false arrest); *McQueen v. Village of Dolton et al.*, 17-cv-02809 (§ 1983 excessive use of force and false arrest).

68.     Prior to and at the time of June 23, 2018, the Village of Dolton was aware that Officer McNeal had been named as a defendant in at least two federal civil rights cases that alleged that Officer McNeal committed excessive force or other police misconduct: *Lee v. McNeal et al.*, 07-cv-06856 (§ 1983 excessive use of force); *Chaney-Jackson v. Village of Dolton et al.*, 13-cv-04187 (same).

69.     The misconduct described in Counts I, II, and III was undertaken pursuant to policies, practices, customs and procedures by which:

    a. As a matter of both policy and practice, the Village of Dolton directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers, and its failure to do so constitutes deliberate indifference;

    b. As a matter of both policy and practice, the Village of Dolton facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct as listed in paragraphs 67 and 68, thereby leading Dolton Police sergeants and officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff;

    c. As a matter of widespread practice so prevalent as to comprise a municipal policy, sergeants and officers of the Dolton Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Complaint on a frequent basis, yet such sergeants and officers remain employed and/or engaged in their duties;

    d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "*code of silence*" in the Dolton Police Department, by which sergeants and officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

    e. As a matter of both policy and practice, the Village of Dolton has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

    f.   As a matter of both policy and practice, the Village of Dolton, after being put on notice that their officers were generating such reports to justify illegal arrests or conduct unconstitutional searches, made a choice not to rectify or suspend such a practice.

70.    The widespread practices described in paragraph 69 were allowed to flourish because the Village of Dolton has declined to implement sufficient training and/or any legitimate and/or effective mechanisms for oversight and/or punishment of police sergeants and officers misconduct and knowingly allow the cover up of misconduct.

71.    The constitutional violations and injuries to Plaintiff outlined in this Complaint, were directly and proximately caused by these interrelated polices, practices and customs of the Village of Dolton, through its Police Department, Police Superintendent, the O.P.S. and Directors of the O.P.S.

72.    As a direct result of the above-described polices and customs, police sergeants and officers of the Dolton Police Department, including the Sergeant Lacey, Officer Collins, and Officer McNeal, believed that their actions would not be adequately monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff demands compensatory damages from the Village of Dolton. Plaintiff also demands punitive damages, costs and attorneys' fees against the Village of Dolton and whatever additional relief this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury

15

**DATED: June 5, 2020**                                    Respectfully submitted,

                                                                MARTESE FLEMING


                                                                By:   ___/s/ *Jerome F. Buch*_____
                                                                      One of His Attorneys

Jerome F. Buch
jbuch@seyfarth.com
Jasmine J. Stanzick
jstanzick@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:     (312) 460-5000
Facsimile:     (312) 460-7000
Firm I.D. No. 90747

## <u>CERTIFICATION OF SERVICE</u>

       The undersigned, an attorney, does hereby certify that the foregoing was served on all counsel of record through the ECF Filing System on June 5, 2020, which will send notification of said filing to all parties of record and also served via e-mail to:

       John B. Murphey
       Odelson & Sterk, Ltd.
       3318 West 95th Street
       Evergreen Park, IL 60805
       jmurphey@osmfm.com

**DATED: June 5, 2020**        By:    /s/ *Jerome F. Buch*

                          One of Plaintiff's Attorneys